**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas Albert MILLER,
Defendant-Appellant.**

**No. 85–3850.**

United States Court of Appeals,
Eleventh Circuit.

June 25, 1987.

L. Edward Glass, Johnstown, Pa., for defendant-appellant.

Steve Purcell and Bruce Hinshelwood, Asst. U.S. Attys., Orlando, Fla., for plaintiff-appellee.

Before ANDERSON and CLARK, Circuit Judges, and SIMPSON *, Senior Circuit Judge.

CLARK, Circuit Judge:

This case involves the stop and search of the car which the appellant was driving, and the question of whether the drugs found in the car must be suppressed under the Fourth Amendment. The facts of this case are nearly identical to those in *United States v. Smith*, 799 F.2d 704 (11th Cir. 1986): The case involves the same Florida state trooper, using the same drug courier

---

* Judge Simpson did not participate in the decision of this case and the decision is by quorum.

28 U.S.C. § 46; Circuit Rule 3.

profile on the same highway. Because the government has not successfully distinguished the *Smith* case, that case controls and we therefore reverse the denial of the appellant's motion to suppress and we vacate his conviction.

## I. FACTS

The appellant, Miller, was driving northbound on Interstate 95 near Orlando, Florida, on June 18, 1985. Florida Highway Patrol Trooper Robert Vogel was parked perpendicular to the northbound lanes, with his headlights illuminating passing vehicles and their occupants. Miller drove by Trooper Vogel at approximately 9:40 p.m. Based on the facts that Miller was driving just below the posted speed limit of 55 miles per hour, Miller was driving a car with out-of-state license plates, and Miller did not turn his head to look into the headlights of Trooper Vogel's parked car, Trooper Vogel decided to pursue Miller's car in order to stop and search the car for drugs. After turning into traffic, Trooper Vogel observed Miller put on his turn signal and pass two slower moving vehicles. Trooper Vogel stated that Miller was driving "overly cautious." After Miller had passed the vehicles, he changed lanes into the right lane and, in so doing, allowed his right wheels to cross over the white painted lane marker about four inches, in violation of Florida traffic laws. According to Trooper Vogel, Miller drove with his wheels across the line for about one tenth of a mile (or, at 55 miles per hour, approximately 6½ seconds). Trooper Vogel then turned on his blue flashing lights and pulled Miller over.

Trooper Vogel approached the car and asked Miller for his license and registration. Miller, appearing to be extremely nervous, produced them. Trooper Vogel asked Miller to get out of the car, and informed Miller of the traffic violation—failure to drive in a single lane. Trooper Vogel then asked Miller about the fact that the car was registered in someone else's name. Miller responded that he was vacationing in Florida and that he had borrowed the car from a friend in Pennsylvania.

Trooper Vogel then requested that Miller sign a voluntary consent to search form, which Miller did. Upon searching the car, Trooper Vogel discovered cocaine hidden under and behind the back seat of the car.

Miller was charged with possession of cocaine with intent to distribute it. Prior to trial, Miller filed a motion to suppress the fruits of the search. Without conducting a hearing, the district court denied the motion with a four word notation: "Denied. Lack of Standing." Miller was convicted in a jury trial, and was sentenced to ten years in prison. On appeal, Miller raises a number of issues, only one of which we need to reach.

## II. ANALYSIS

We reach only the appellant's challenge to the denial of his motion to suppress the evidence uncovered in the search of the car he was driving. Our primary task is to decide whether *United States v. Smith,* 799 F.2d 704 (11th Cir.1986), controls this case. The court in *Smith* considered another of Trooper Vogel's automobile searches, and reversed the denial of a motion to suppress. The *Smith* court held that the factors underlying Trooper Vogel's decision to pull over the car in question (the same factors relevant here) did not give rise to a "reasonable suspicion of illegal activity" and thus could not support the stop and search. *Id.* at 707–08. The court agreed with the district court's determination that the traffic violation (the same violation cited here) was a pretext for the drug stop and search and thus could not validate the search. In the *Smith* case, the government conceded that "if the initial stop was not reasonable, then the evidence seized from the trunk is a fruit of the stop and should have been suppressed." *Id.* at 706 n. 1.

The government asserts a number of points to distinguish the *Smith* case. In considering the arguments, we are hampered by the fact that the district court held no hearing on the motion to suppress, and failed to make any findings other than a simple statement of "lack of standing." While there is no per se requirement that

hearings be held on motions to suppress, in this case it is very difficult to make the necessary determinations of the justification for the stop and the legitimacy of the expectation of privacy without some development of the facts. In resolving this appeal in the absence of district court findings, we have carefully scrutinized the details of the stop as they were developed at trial.

A. Whether the appellant has standing to challenge the search.

 The government's primary argument, and the basis on which the district court denied the motion to suppress, is that the appellant, Miller, does not have standing to challenge the search, because Miller was driving a borrowed car. From the time of the initial stop, Miller has asserted that he had permission from a friend in Pennsylvania to use the car. The government has never introduced, or even alluded to, evidence establishing the contrary.

It is not clear on exactly what basis the district court found a lack of standing, but the primary case presented by the government in its initial opposition to the motion to suppress was *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The holding of the *Rakas* case, however, is only marginally relevant to the facts in this case. In *Rakas*, the movants were passengers in a car they neither owned nor had borrowed. *Rakas* did not address the situation of the sole occupant of a borrowed car challenging a search of the car.

The *Rakas* court did set out general guidelines for determining standing to challenge a search, indicating that a movant must have had a "legitimate expectation of privacy" in the premises being searched in order to challenge the search. 439 U.S. at 143, 99 S.Ct. at 430. The *Rakas* opinion

analyzed and narrowed the holding in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The *Jones* case held that an individual who was in an apartment with the permission of the owner had standing to challenge a search of the apartment.[1] As described in *Rakas*, the *Jones* court found that the borrower of the apartment had a legitimate expectation of privacy in the apartment, even though he had no actual ownership interest in it. *Rakas*, 439 U.S. at 143, 99 S.Ct. at 430. In the facts of this case, we view the situation closer to that in *Jones* than in *Rakas*, and we thus find that the appellant, Miller, did have a legitimate expectation of privacy in the borrowed car, and therefore does have standing to challenge the search.[2]

Our holding is not disturbed by the approach taken by the Tenth Circuit in *United States v. Obregon*, 748 F.2d 1371 (10th Cir.1984), as advanced by the government in this case. The court in *Obregon* rejected an assertion of standing by the driver of a car that had an expired license plate and that was rented by a third party who was not in the car. Without deciding whether, in this circuit, the *Obregon* defendant would have had standing, we think that the appellant in this case had a far clearer expectation of privacy in the borrowed car than does a driver in Obregon's situation. We also note that the initial stop in *Obregon* was legitimate, unlike in this case; in *Obregon*, the stop was made pursuant to a routine roadblock checking licenses and registrations.

Our holding is further supported by the *Smith* case. In that case, although the defendant was driving a rented car and could only produce a rental contract that had expired three weeks earlier, there is no suggestion that the defendant lacked the

---

**1.** We note that in *Jones* the consent of the owner was established by the testimony of the individual seeking to suppress the search. 362 U.S. at 267, 80 S.Ct. at 734. Similarly, although no evidentiary hearing was held, the appellant has consistently stated that he had permission to use the car in question.

**2.** The holding that the government advocates would mean that a perfectly innocent citizen

who, say, borrowed a neighbor's car with permission, would not have standing to challenge a search of that car. We are not willing to require such a citizen to forego his or her Fourth Amendment rights or obtain some form of signed affidavit that could be presented to a law enforcement officer to establish legitimate possession of the car.

requisite standing to challenge the search. In finding that Miller has standing to challenge the search of a car borrowed from a friend, we join a number of other courts that have similarly held. *See, e.g., United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir.1980) (finding standing to challenge search of car borrowed from friend), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981); *United States v. Posey*, 663 F.2d 37, 41 (7th Cir.1981) (car borrowed from wife), *cert. denied*, 455 U.S. 959, 102 S.Ct. 1473, 71 L.Ed.2d 679 (1982); *United States v. Williams*, 714 F.2d 777, 779 (8th Cir.1983) (car borrowed from uncle's girlfriend); *United States v. Griffin*, 729 F.2d 475, 483 (7th Cir.) (car borrowed from brother), *cert. denied*, 469 U.S. 830, 105 S.Ct. 117, 83 L.Ed.2d 60 (1984); *United States v. Rose*, 731 F.2d 1337, 1343 (8th Cir.) (car borrowed from sister), *cert. denied*, 469 U.S. 931, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984).

B. Whether the initial stop of the appellant's car was legitimate.

■ On appeal, the government argues that the initial stop of the appellant's car was a legitimate traffic stop. As the government has acknowledged, the argument that the stop based on the drug courier profile is legitimate is barred by the *Smith* case. The government's contention that the stop was a legitimate traffic stop is also foreclosed by *Smith*.

At oral argument, the government argued that the *Smith* panel merely followed the district court's finding in that case that the traffic stop was pretextual. The government argues in this case that the district court did not make such a finding and thus we are not bound to find that the stop was pretextual. At the outset, we note that the *Smith* court did not couch its analysis in terms of simply adhering to a lower court finding; instead, it seemed to make its own analysis of the record and reach its own conclusions that the stop was pretextual. In any event, we have considered the record now before this court, and we conclude that the traffic stop was merely a pretext to legitimate the impermissible stop and search.

The holding of *Smith* requires this finding. The *Smith* court held that "the proper inquiry is whether a reasonable officer *would* have made the seizure in the absence of illegitimate motivation." 799 F.2d at 708 (emphasis in original). The court stated that it would reverse the denial of the motion to suppress because "the evidence suggests that a reasonable officer would not have stopped the appellants' without an invalid purpose to obtain evidence of additional criminal activity." *Id.*

In this case, Trooper Vogel plainly testified that the "stop would have been made ... whether or not there was a traffic violation." Record, Volume 3, at 49. The trooper decided to pursue and stop Miller's car before any alleged traffic violation occurred. *Id.* at 46. Taken all together, the record reveals that Trooper Vogel made the stop because of his hope to catch a courier, and not because the appellant strayed over the white line a few inches for a few seconds. Based on the record, we hold that a reasonable officer would not have stopped Miller absent some other motive. Thus, under facts nearly identical to those in *Smith*, we hold that the initial stop of Miller's car was not legitimate.

C. Whether the appellant's consent to search the car was voluntary.

■ In the *Smith* case, the government agreed that "if the initial stop of the vehicle was not reasonable, then the evidence ... should have been suppressed." 799 F.2d at 706 n. 1. In this case, however, the government argues that the fact that Miller signed a voluntary consent to search form excuses the unreasonable stop and sufficiently attenuates the taint of the search so as to legitimate the search.

In resolving this issue, we are guided by this court's en banc decision in *United States v. Berry*, 670 F.2d 583 (5th Cir. Unit B 1982) (en banc). The court wrote:

In order to eliminate any taint from an involuntary seizure or arrest, there must be proof both that the consent was voluntary and that it was not the product of the illegal detention. Among the [rele-

vant] factors ... are the temporal proximity of an illegal arrest and confession, intervening circumstances, and the purpose and flagrancy of the official misconduct.

*Id.* at 604–05 (footnote omitted) (citations omitted). The court in *Berry* found that the consent to search was voluntary because there were substantial intervening circumstances: The defendants were told that they were free to refuse consent and that they could consult with an attorney, the defendants were allowed to consult with each other outside the hearing of the officers, and the defendants were offered the use of a telephone in order to contact an attorney. Furthermore, the court noted that probable cause to detain the defendants arguably existed independent of the search in that case.

In this case, we find that there were *not* sufficient intervening circumstances to make the consent voluntary. The record reveals that immediately after requesting Miller's driver's license and registration, Trooper Vogel "requested [Miller] to exit the car and [the trooper then] confronted him with a traffic violation." Record, Volume 3, at 16. Miller was at the time extremely nervous. *Id.* at 15. The Supreme Court has noted that a traffic stop is an "unsettling show of authority" that may "create substantial anxiety." *Delaware v. Prouse,* 440 U.S. 648, 657, 99 S.Ct. 1391, 1398, 59 L.Ed.2d 660 (1979).

Following Trooper Vogel's statement that Miller had committed a traffic violation, the trooper inquired about the fact that the car was not registered in Miller's name. Trooper Vogel then requested that Miller sign a consent form. The form indicated that it was "voluntary," although Trooper Vogel's testimony was unclear on whether or how much he emphasized that fact to Miller. *See* Record, Volume 3, at 61.

This case is very similar to the facts in *United States v. Thompson,* 712 F.2d 1356 (11th Cir.1983), in which this court found invalid an automobile search consent form signed after an unconstitutional detention. Applying *Berry,* the court ruled that "there was no significant lapse of time between the unlawful detention and the consent," that "no intervening circumstances dissipated the effect of the unlawful detention," and that the officer's conduct, while not flagrant, had "no arguable [legal] basis." *Id.* at 1362.

Under the *Berry* standard, we hold that the consent was the product of the illegal detention, and that the taint of the unreasonable stop was not sufficiently attenuated. The request for consent followed almost immediately upon the stop, and there were insufficient intervening circumstances that might have reduced the coercive nature of the stop and permitted the appellant to make a voluntary decision about the consent to search.

### III. CONCLUSION

In *Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980), the Supreme Court expressed concern, in the airport search context, about a drug courier profile that would "describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures" if the Court validated the use of the profile. In this case, Trooper Vogel pulled over at 9:40 at night a car that was obeying the speed limit, that was being driven cautiously, and that was from out-of-state. During the Florida tourist season, that description likely describes a high percentage of cars on Interstate 95. The addition of the fact that the driver of the northbound car did not glance into the headlights of Trooper Vogel's car on the side of the road does not reassure this court that a reasonable law enforcement officer should have probable cause to pull a car over and initiate a drug search. The record does not reveal how many unsuccessful searches Trooper Vogel has conducted or how many innocent travelers the officer has detained. Common sense suggests that those numbers may be significant. As well as protecting alleged criminals who are wrongfully stopped or searched, the Fourth Amendment of the Constitution protects these innocent citizens as well.

For the reasons stated in this opinion, the denial of the appellant's motion to suppress the fruits of the search is RE-VERSED, and the judgment of the district court is VACATED.