## Richmond

ALBERT JUSTIN LAWRENCE

v.

COMMONWEALTH OF VIRGINIA

No. 0933-92-2

Decided September 28, 1993

COUNSEL

Elizabeth D. Scher (Morchower, Luxton and Whaley, on brief), for appellant.

Richard B. Smith, Assistant Attorney General (Stephen D. Rosenthal, Attorney General; Margaret Ann B. Walker, Assistant Attorney General, on brief), for appellee.

OPINION

**FITZPATRICK, J.**—Albert Justin Lawrence (appellant) was convicted after a bench trial of possession with intent to distribute 37.52 grams of heroin, in violation of Code § 18.2-248. On appeal, he argues that the trial court erred by denying his motion to suppress the evidence seized from him during a warrantless search. The appropriate disposition of this appeal turns on whether appellant voluntarily consented to a police search of the front left pocket of his pants. We conclude that the police acted properly and, therefore, we affirm.

## BACKGROUND

On October 22, 1991, an Amtrak Police Officer observed appellant and another male arrive at the Staples Mill Road Amtrak station in Henrico County one minute before their train departed. They bought two tickets under the name "S. Miller." The tickets were round-trip to Philadelphia, a known "source city" for drug distribution, returning the same day. Appellant paid for the tickets in cash. The Amtrak officer suspected drug activity and notified the Drug Enforcement Administration (DEA).

DEA task-force Officers Farmer and Nicely met the train upon its return from Philadelphia at 12:30 a.m. the next morning. The officers observed the two suspects inside the train and noticed that they walked the full length of the train before exiting the train together.

Appellant separated himself from the crowd of people and carefully checked all around him. The suspects walked toward the side of the station, said something to each other, then separated. Appellant, at that point, diverted his "total attention" to Officer Nicely, who had begun to follow appellant's companion.

Officer Farmer approached appellant as he was standing at the station entrance. The officer identified himself and asked appellant where he had been. Appellant, who began shaking, fidgeting, and shifting his eyes between Farmer and Nicely, said that he had been in Philadelphia to visit his daughter. Farmer asked appellant for his identification, but appellant denied having any. Farmer asked appellant if he had a ticket and if he minded if Farmer looked at it. Appellant then gave Farmer his ticket stub, which indicated the name "S. Miller." Appellant stated that "S. Miller" was a friend of his.

When Farmer asked appellant the name of his daughter, he "looked straight up in the air for approximately a minute and just gazed up in the air." Thereafter, Farmer asked: "If you don't know your daughter's name, then where does she live?" Appellant did not reply. Farmer then asked him if he was carrying any illegal narcotics or weapons. Appellant replied, "No." Farmer further asked whether appellant "would mind" letting him search his person for any illegal narcotics or weapons. Appellant replied, "No, I don't have any guns or drugs on me," and then voluntarily began to empty his pockets, handing Farmer the contents. Throughout the conversation, Farmer advised appellant that he was under no duty to answer questions, that he was not under arrest, and that he was free to leave at any time.

Farmer noticed that appellant emptied all of his pockets except his left front pants pocket. Farmer asked appellant what was in the pocket because it contained a large bulge. Appellant initially denied that there was anything in the pocket, but when asked if he "would mind" showing Farmer, appellant pulled out several tissues, handed them to the officer and stated: "That's all I have." The noticeable bulge remained. Farmer touched the front of the pocket and the bulge with the back of his hand and asked, "What is it?" Appellant again put his hand in his pocket and volunteered a set of keys. He became more excited and was "moving around more. His volume in his voice was getting a

little bit higher at that point." The bulge, however, still existed. When appellant quickly thrust his hand back into his pocket Farmer advised him "to calm down and to remove his hands slowly from his pocket." When he did, Farmer patted down the outside of the pocket. Farmer then pulled, pushed or squeezed the bulge and could feel the bulge "crinkling in the pocket." He described the bulge as follows:

> It felt like . . . several bundles of packaging material that I from my training experience have felt that could be containing illegal narcotics. When I did this, I stated to [appellant,] "Now I know why you don't want to empty these pockets," and [appellant] said, "There ain't nothing in there," and he tried to put his hand back into his pocket again. When he did so, I placed my hand on his wrist to keep him from going back into his pocket. I removed his hand, and when I did so I put my hand back down into his pocket and removed what I have labeled as Exhibit 1, which is approximately 38 packets.

Farmer was suspicious because appellant denied having anything in the pocket, yet Farmer could see and feel a bulge. Farmer assumed that appellant did not want him to know what was in the pocket. After Farmer squeezed the bulging area of the pocket he believed the pocket contained drug packaging material, because he could feel two bundles of waxy type paper crinkling. Farmer acknowledged that at that point he probably would not have permitted appellant to leave had appellant attempted to do so.

## CONSENSUAL ENCOUNTER AND SEARCH

■ When a motion to suppress is reviewed on appeal, we examine the evidence presented at both the suppression hearing and trial in determining whether the contraband was lawfully seized. *DePriest v. Commonwealth,* 4 Va. App. 577, 583, 359 S.E.2d 540, 543 (1987), *cert. denied,* 488 U.S. 985 (1988). Further, "[t]he burden is upon [appellant] to show that [the denial of the suppression motion], when the evidence is considered most favorably to the Commonwealth, constituted reversible error." *Fore v. Commonwealth,* 220 Va. 1007, 1010, 265 S.E.2d 729, 731, *cert. denied,* 449 U.S. 1017 (1980).

At oral argument before us, appellant's counsel conceded that upon viewing the evidence in the light most favorable to the Commonwealth:

there could be a finding that [appellant] did initially consent to some kind of a search. . . . I am conceding that [appellant] did consent to unloading these pockets and showing those to the police officer, and that's exactly what happened. Our argument is that he limited that search, that he withdrew his consent as far as that left front pocket, any consent that had been given as far as that left front pocket went.

Further, appellant noted in his brief that "[a]lthough this may have began [sic] as a consensual encounter, once [appellant] stopped voluntarily cooperating with [the police], its consensual nature ceased." Accordingly, the sole issue presented in this appeal is whether appellant's conduct limited the scope of the initial consent or whether his conduct withdrew the previously given consent.

■ A voluntary or consensual encounter between a police officer and a citizen does "not implicate the Fourth Amendment," *Iglesias v. Commonwealth,* 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988), as long as "a reasonable person would understand that he or she could refuse to cooperate." *United States v. Wilson,* 953 F.2d 116, 121 (4th Cir. 1991) (citations omitted). "Voluntarily responding to a police request, which most citizens will do, does not negate 'the consensual nature of the response.'" *Grinton v. Commonwealth,* 14 Va. App. 846, 849, 419 S.E.2d 860, 862 (1992) (quoting *I.N.S. v. Delgado,* 466 U.S. 210, 216 (1984)). "Such encounters . . . remain consensual 'as long as the citizen voluntarily cooperates with the police.' Fourth Amendment scrutiny is triggered, however, the moment an encounter loses its consensual nature." *Payne v. Commonwealth,* 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (quoting *Wilson,* 953 F.2d at 121) (other citation omitted).

In this case, the trial court found as a fact that:

This was a relatively short encounter. [Appellant] was clearly told he had the right to leave, that he didn't have to talk with them. He agreed to talk with them. It was very short. He never made any indication that he wanted to curtail the encounter.

The evidence shows that appellant knew that he was free to leave, but he never attempted to do so. He continued to respond to the officer's questions, albeit untruthfully. At a minimum, he was pretending to search himself in response to the officer's focus on the bulge in his left front pants pocket. Viewing this evidence in the light most favorable to the Commonwealth, we uphold the trial court's finding that appellant was not "seized" within the meaning of the Fourth

Amendment until after the drugs were discovered and the officer placed him under arrest.

## SCOPE OF CONSENSUAL SEARCH

■ "The scope of a person's consent is determined by whether it is objectively reasonable for the police to believe that the consent permitted them to search where they did." *Grinton,* 14 Va. App. at 851, 419 S.E.2d at 862 (citing *Florida v. Jimeno,* 500 U.S. 248, 250-51 (1991)). "A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Jimeno,* 500 U.S. at 252.

In this case, the trial court specifically found that appellant consented to a search of his person for the stated purpose of detecting any illegal narcotics or weapons. Further, appellant concedes to having initially consented to a search. No evidence contradicts the officer's testimony regarding appellant's oral permission to search his person. Officer Farmer testified as follows:

> I asked [appellant] . . . if he was carrying any illegal narcotics or weapons. [Appellant] took a step back and replied, "No." That's all he said was just no, very emphatically to me. . . . I asked [appellant] if he would mind letting me search his person for any illegal narcotics or weapons. Again [appellant] replied, "No, I don't have any guns or drugs on me." He was becoming very agitated at that point and, and moving around alot, kept putting his hands in his pockets. As soon as he said, "No, I don't have any guns or drugs on me," he started pulling items out of his pockets and handing them to me.

This evidence supports the trial court's finding that appellant consented to a search of his person. *See United States v. Werking,* 915 F.2d 1404, 1410 (10th Cir. 1990) (defendant's answer "no" when asked if he would object to the search was "clear and positive evidence that [his] consent was unequivocal, specific, and freely and intelligently given").

After appellant displayed the contents of all his pockets except for the front left pants pocket, the officer focused his inquiry upon the contents of that pocket. Officer Farmer testified as follows regarding the large bulge in appellant's left front pocket:

I asked him what was in his left front pants pocket and [appellant] replied to me, "Nothing." Then I asked him if he would mind showing me what was in his pocket and [appellant] put his left hand into his front pants pocket. As he did so, he pushed the large bulge to the rear of his pocket. . . . He pulled out several tissues and then handed them to me and said, "That's all I have." I then reached down and touched the bulge with the back of my hand and asked him again, "What is it?" He again put his hand in his left front pants pocket, pushed the bulge to the rear again and pulled out a set of keys. When he did so, after he pulled his hand out at that time, I still observed the large bulge in his pocket. He was still becoming more excited and moving around more. His volume in his voice was getting a little higher at that point. . . . I then asked him again what was in his pocket and he thrust, [appellant] thrust his hand into his pocket. I advised [appellant] to calm down and to move - remove his hands slowly from his pocket. When he removed his hand, I then patted the object, the bulge in his pocket with the front side of my hand, as if feeling the pocket.

■ The evidence shows that appellant made no objection to the officer's questioning and made no statement withdrawing his prior consent to search his person for illegal narcotics or weapons. Appellant made no attempt to leave or move away when the officer began to feel the appellant's left front pocket. "Failure to object to the continuation of the search under these circumstances may be considered an indication that the search was within the scope of the consent." *United States v. Espinosa,* 782 F.2d 888, 892 (10th Cir. 1986); *see also United States v. DeWitt,* 946 F.2d 1497, 1501 (10th Cir. 1991), *cert. denied,* 502 U.S. 1118 (1992); *Grinton,* 14 Va. App. at 851, 419 S.E.2d at 863 ("The scope of a search may be further defined during the course of the search by the passive acquiescence of the person whose property is being searched.")

We conclude that appellant's "conduct thus falls far short of an unequivocal act or statement of withdrawal, something found in most withdrawal of consent cases." *United States v. Alfaro,* 935 F.2d 64, 67 (5th Cir. 1991) (citations omitted). "More likely, [appellant's] hesitancy places his appeal within the ambit of [*United States v. Brown,* 884 F.2d 1309, 1312 (9th Cir. 1989), *cert. denied,* 493 U.S. 1025 (1990)], where a defendant who consented to a search of his suitcase but then became extremely reluctant to hand over his suitcase keys was held not to have taken back his consent." *Alfaro,* 935 F.2d at 67.

Accordingly, we cannot say that the trial court's finding that the search was consensual is clearly wrong. Therefore, we affirm the conviction.

*Affirmed.*

Moon, C.J., concurred.

Benton, J., dissenting.

The Commonwealth sought to prove that no warrant was required in this case because of an alleged consent. Albert Justin Lawrence contends that the evidence proved he did not consent to the search and that, even if his conduct was deemed tantamount to consent, that consent was limited to allowing the officer to view only the items Lawrence removed from his pockets. I would hold that the trial judge's finding of consent is not supported by the evidence. I would further hold that the trial judge's finding that Lawrence did not limit the consent is also not supported by the record. I, therefore, dissent.

"It is well settled that the burden is on the Commonwealth to establish an exception to the warrant requirement." *Walls v. Commonwealth,* 2 Va. App. 639, 645, 347 S.E.2d 175, 178 (1986). "'Consent to a search . . . must be unequivocal, specific and intelligently given . . . and it is not lightly to be inferred." *Elliotte v. Commonwealth,* 7 Va. App. 234, 239, 372 S.E.2d 416, 419 (1988) (quoting *Via v. Peyton,* 284 F. Supp. 961, 967 (W.D. Va. 1968)). Whenever the Commonwealth alleges that a search was consensual, "the [Commonwealth] . . . bears the burden of establishing consent and this burden is heavier where the alleged consent is based on an implication." *Walls,* 2 Va. App. at 645, 347 S.E.2d at 178. The determination that must be made in this case is not whether consent was voluntary, but whether consent was ever given.

Nothing in this record proved that Lawrence consented to the officer's reach into his pocket to search. The majority opinion cites the following testimony of Officer Farmer to support the finding of consent:

I asked Lawrence . . . if he was carrying any illegal narcotics or weapons. Lawrence took a step back and replied, "No." That's all he said was just no, very emphatically to me. . . . I asked . . . Lawrence if he would mind letting me search his person for any illegal narcotics or weapons. Again Lawrence replied, "No, I

don't have any guns or drugs on me." He was becoming very agitated at that point and, and moving around a lot, kept putting his hands in his pockets. As soon as he said, "No, I don't have any guns or drugs on me," he started pulling items out of his pockets and handing them to me.

In my judgment, this testimony fails to prove that Lawrence consented to the officer's search of Lawrence's pocket.

The officer testified that Lawrence began removing items from his pocket. When the officer further inquired about the contents in Lawrence's pocket, Lawrence denied that he had anything else in his pocket. The officer testified that the following occurred:

Lawrence said, "There ain't nothing in there," and he tried to put his hand back into his pocket again. When he did so, I placed my hand on his wrist to keep him from going back into his pocket. I removed his hand, and when I did so I put my hand back down into his pocket and removed what I have labeled as Exhibit 1, which is approximately 38 packets.

The officer did not testify that Lawrence verbally assented to the officer's reach into Lawrence's pocket. Furthermore, Lawrence's conduct did not give any objective, reasonable indication that Lawrence agreed to the officer's search of Lawrence's pocket. Indeed, Lawrence's conduct implicitly conveyed the message that he did not want the officer to reach into his pockets. The absence of an affirmative response and Lawrence's own removal of items from his pocket were responses inconsistent with a finding of consent to the search. *Cf. State v. Aucoin,* 613 So. 2d 206, 210 (La. Ct. App. 1992) (when officer requested identification, the accused's response that it was in the wallet that officer was holding was not a consent to search). Whenever consent is not explicitly given, "the existence of consent to search is not lightly to be inferred." *United States v. Patacchia,* 602 F.2d 218, 219 (9th Cir. 1979).

In *Miranda v. State,* 375 S.E.2d 295 (Ga. Ct. App. 1988), the Court held that the accused did not consent to a search of her luggage when, in response to an officer's request to search her luggage, she began to remove clothing. *Id.* at 296. The facts proved that after the accused removed the clothing and "stood with the clothes in her hand, the officer searched the bag himself and found cocaine." *Id.* The Court stated that "[w]hile her conduct in opening her bag and removing two garments,

an action which did not reveal any contraband, may well have signalled acquiescence, it did not show consent." *Id.* at 298.

The burden of proving consent "cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina,* 391 U.S. 543, 548-49 (1968). In the absence of an affirmative response by Lawrence, and in view of Lawrence's preemptive conduct, the officer's reach into Lawrence's pocket can only be viewed as an assertion of police authority. "Conduct that is questionable or clearly indicates mere acquiescence to perceived police authority will not support a search based on the party's alleged consent, regardless of the lack of coercion." *Evans v. State,* 804 S.W.2d 730, 734 (Ark. Ct. App. 1991).

Moreover, a person may by conduct or verbal expression delimit the scope of the search to which that person consents. *See Florida v. Jimeno,* 500 U.S. 248, 252 (1991). The officer testified that as Lawrence removed items from his pocket and gave them to the officer, the officer returned them to Lawrence. Lawrence then returned the items to his pockets. The officer's conduct demonstrates that he believed that Lawrence had not granted his request to reach into his pockets. No objectively reasonable person would have understood at that point that Lawrence had agreed to more than allowing the officer to see what Lawrence had chosen to show the officer. When Lawrence disclosed the contents of his pockets, the officer had no basis for reaching into Lawrence's pocket without obtaining explicit consent to do so. Lawrence had the right to "delimit as he [chose] the scope of the search to which he consent[ed]." *Id.* His conduct in this case effectively did so.