COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Elder and Alston
Argued by teleconference


COMMONWEALTH OF VIRGINIA

v.       Record No. 1979-10-2                    MEMORANDUM OPINION* BY
                                                 JUDGE ROSSIE D. ALSTON, JR.
MICHAEL ADAM FERRELL                                 FEBRUARY 10, 2011


FROM THE CIRCUIT COURT OF LOUISA COUNTY
Timothy K. Sanner, Judge

Gregory W. Franklin, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on briefs), for appellant.

Stephen C. Harris for appellee.


The Commonwealth appeals the trial court's pretrial order granting a motion to suppress

evidence recovered by the police during a search of a Chevrolet Celebrity automobile.  On

appeal, the Commonwealth argues that the trial court erred in granting the motion to suppress

because Michael Adam Ferrell (defendant) lacked standing to object to the search and because

the trial court's ruling that consent to the search was withdrawn was unsupported by the evidence

and plainly wrong.  For the reasons that follow, we find that the trial court erred in granting the

motion to suppress and remand the case for trial on the merits if the Commonwealth is so

inclined.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  Background[1]

On May 22, 2010, assailants in a vehicle shot William Luck at the Lake Anna Beach Marina.  Investigating officers, including Detective Jeffrey Simms of the Louisa County Sheriff's Office, obtained a description of the vehicle from which the shot was fired.  A witness to the shooting, Christopher Cox, informed the officers that the vehicle belonged to the defendant's grandmother, Evelyn Ferrell (herein "grandmother").  Subsequently, police located a Chevrolet Celebrity, a vehicle matching the description of that used in the shooting, parked in the carport of a residence on Hayden Lane.  The residence, along with several other residences on the street, belonged to Daniel A. Ferrell, Sr., defendant's father (herein "father").  Although the residence at which the car was found belonged to father, grandmother lived there.

Officers approached grandmother's house to obtain consent to search the vehicle.  At the house, they spoke first with Daniel Ferrell, Jr., defendant's brother, who told them that the car belonged to grandmother.  Officers then spoke to grandmother, who consented to a search of the car.  The police then began to search the car.  At some point, after grandmother consented to the search, grandmother called father and told him that the police were at the house.  At the hearing on the motion to suppress, father testified as follows regarding his conversation with grandmother:

> A:  . . . I tried to speak to [the police] when [grandmother] called me crying and said that the police were there, and I asked them not to do anything until I got there, you know, that I would be there in 15 or 20 minutes, and I asked her if they wanted to talk to me at that time on the cell phone, and I heard them – cause [sic] she was on the deck . . . my daughter helped them get her outside –

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

THE COURT: Let me just back you up for a minute. So, who are you on the phone with at this point?

A: I – [grandmother] had called me hysterical, just crying and, you know – you know, and I told her then to tell them not to do anything else, because she – she don't [sic] understand a lot of times . . . .

THE COURT: So . . . [grandmother] had called you. So then you told her to tell the police, basically, not to search the vehicle?

A: She had me on the phone and the police was [sic] right there in front of her – the two officers were right there in front of her with Hillary [Pritchett], and I said that I was leaving Mineral [Restaurant] right then. . . . I told them we was [sic] leaving, I could be there in 15 or 20 minutes, do not do anything until I get there.

THE COURT: You're telling this to who, [grandmother]?

A: [Grandmother] on the phone –

THE COURT: Okay.

A: -- and she's relaying it to the police officers, cause [sic] I heard her tell the police officers, and I mean, I asked if they needed to speak to me and they refused to speak to me. He told me – you know, I heard them say --- reply back to her, they did not need to speak to me. That's how close they were with the conversation. I could hear both ends.

Father's adult daughter, Hillary Pritchett (Pritchett), was present at grandmother's house while the search was conducted. Pritchett testified as follows regarding the phone conversation:

A: [When I arrived at grandmother's house], the police were already searching the vehicle. I ran up on the porch and [grandmother] was already on the phone with [father], and at that time he was telling her to tell the cops to not do anything, to tell them that he would be there in 20 minutes.

THE COURT: How did you – how could you hear that?

A: Because she was repeating everything he was saying, and their response were – to her, was they don't need to talk to him.

- 3 -

In contrast to father's and Pritchett's testimony, Detective Simms testified at the hearing on the motion to suppress that, at the time of the search, he was unaware of any telephone conversation between father and grandmother and did not hear grandmother speaking to father as father and Pritchett testified.

During the search, officers discovered in the car a .40 caliber shell casing, consistent with the casing found where Luck was shot and made by the same manufacturer. A lab report later revealed that the same weapon fired the casing at the scene of the shooting and the casing found in the car.

Defendant was charged with aggravated malicious wounding, use of a firearm in a felony, and possession of a firearm as a convicted felon. Before trial, defendant moved to suppress the evidence obtained from the search of the car. On August 23, 2010, the trial court held a hearing on the motion to suppress. Detective Simms, Pritchett, and father testified concerning the circumstances of the search of the car. In addition to the testimony described above, father testified that he had been the sole owner of the Chevrolet Celebrity for at least the previous five years, when he bought it from grandmother. He kept the car as a "good spare vehicle for the family" and had lent it to both his friends and his family in the past. Approximately three or four weeks before the search of the vehicle, defendant's truck was damaged, and defendant needed a car. Father lent defendant the Chevrolet Celebrity, and, at the time of the search, defendant had the only set of keys to the car.

The trial court found that father was the true owner of the Chevrolet Celebrity and defendant's possession of the only set of keys to the vehicle and his continued exclusive use of the vehicle for several weeks gave him an expectation of privacy in the car and standing to challenge the search. The trial court further found that Detective Simms, father, and Pritchett were all credible witnesses, with some flaws in their testimony. Specifically, the trial court

- 4 -

apparently discredited Detective Simms' testimony that police were unaware of the phone conversation between father and grandmother and credited father and Pritchett's testimony regarding the phone conversation. Moreover, the trial court found that the officers reasonably believed that grandmother had authority to grant consent to search the vehicle, but that, subsequently,

> [Grandmother], apparently upset that the police were now searching the vehicle, calls [father] and Ms. Pritchett. On this evidentiary point, detective Sims [sic] was relatively weak and the defendant's evidence strong. Ms. Pritchett went to the scene soon thereafter and her testimony was that [grandmother] was on the phone with [father] repeating for the officers what he said, which generally seemed to consist of the fact that he was the owner of the vehicle and didn't want the vehicle searched. It appears to the Court that at that point [grandmother] was making it known to the officers that [father] and implicitly herself, as well, did not want the vehicle searched and were ignored by the officers present. . . . It appears to the Court that when [grandmother's] demeanor changed and she advised the officers that [father] was on his way and wanted the search stopped that a decidedly different set of circumstances was now occurring than had originally been the case. Under these circumstances, consent was being withdrawn.

As a result, the trial court granted defendant's motion to suppress. This appeal followed.

## II. Analysis

On appeal, the Commonwealth argues that the trial court erred in holding that defendant had standing to challenge the search and that grandmother had effectively withdrawn her consent to the search.

## A. Standing

A defendant who moves to suppress evidence obtained as a result of a search has the burden to prove that he had a legitimate expectation of privacy in the area searched so as to confer standing to challenge the search. Bell v. Commonwealth, 264 Va. 172, 190, 563 S.E.2d 695, 708 (2002) (citing Barnes v. Commonwealth, 234 Va. 130, 135, 360 S.E.2d 196, 200 (1987)).

In Hardy v. Commonwealth, 17 Va. App. 677, 680, 440 S.E.2d 434, 436 (1994) (citing Josephs v. Commonwealth, 10 Va. App. 87, 92-95, 390 S.E.2d 491, 493-96 (1990) (*en banc*)), this Court held that "[a]n accused has standing to object to a search of an automobile only if he is the owner or in lawful possession of it." In Hardy, the defendant's brother-in-law lent his Thunderbird car to the defendant. Id. at 679, 440 S.E.2d at 436. "At the time of the search, [the defendant] had been in lawful possession of the vehicle for several days." Id. at 680, 440 S.E.2d at 436. Noting that "[o]ther jurisdictions have uniformly held that the mere fact that a vehicle is borrowed does not diminish the borrower's reasonable expectation of privacy in it," id. (citing United States v. Miller, 821 F.2d 546 (11th Cir. 1987); United States v. Portillo, 633 F.2d 1313 (9th Cir. 1980); United States v. Williams, 714 F.2d 777 (8th Cir. 1983)), the Court held that the defendant had standing to challenge the search of the car. Id. at 681, 440 S.E.2d at 437.

From the analytical framework articulated in Hardy, defendant in the instant case cannot be denied standing simply because he was not the owner of the car. Defendant had "lawful possession" of the car for three to four weeks before the search, having been given the only set of keys to the car by father. As a result, under Hardy, defendant had standing to challenge the search. Id. at 680, 440 S.E.2d at 436.

We reject the Commonwealth's argument that defendant abandoned his privacy interest in the car by parking it in grandmother's driveway, leaving the car available to father for father to lend to others. Although defendant parked the car in grandmother's driveway, its usual parking place, defendant retained sole possession of the only set of keys to the car. Defendant's possession of the keys to the car established his dominion and control over the vehicle and the items located therein. Wright v. Commonwealth, 53 Va. App. 266, 274, 670 S.E.2d 772, 776 (2009) (citing Bell v. Commonwealth, 21 Va. App. 693, 698-99, 467 S.E.2d 289, 291-92 (1996) (holding that possession of a vehicle's keys gave a defendant "possession and control" of the

vehicle under Code § 18.2-58.1, the carjacking statute)). Without the keys, father would have been unable to lend the car to anyone else. Therefore, defendant retained possession of the car and his privacy interest in it. As a result, we hold that defendant had standing to challenge the search.

### B. Withdrawal of Consent

The Commonwealth also argues that the trial court erred in holding that grandmother effectively withdrew her consent to the search.

At the outset, we note that the trial court held that grandmother had apparent authority to consent to a search of the car. See generally Glenn v. Commonwealth, 275 Va. 123, 132-33, 654 S.E.2d 910, 914 (2008) (stating that "'[e]ven where actual authority is lacking, . . . a third party has apparent authority to consent to a search when an officer reasonably, even if erroneously, believes the third party possesses authority to consent'" (quoting United States v. Andrus, 483 F.3d 711, 716-17 (10th Cir. 2007))). Because neither party raises the issue of grandmother's apparent authority to grant consent to search the vehicle, we do not consider it on appeal; thus, the only question in the instant case is whether grandmother withdrew her consent to the search.

"On appeal of the denial of a motion to suppress, we consider the evidence . . . in the light most favorable to the prevailing party, granting to the evidence all reasonable inferences fairly deducible therefrom." Ward v. Commonwealth, 47 Va. App. 733, 742-43, 627 S.E.2d 520, 525 (2006) (citation omitted). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). However, this Court considers *de novo* whether the facts "implicate the Fourth Amendment, and, if so, whether the officers unlawfully

infringed upon an area protected by the Fourth Amendment." McNair v. Commonwealth, 31 Va. App. 76, 82, 521 S.E.2d 303, 306 (1999).

"Once valid consent is given, the police may conduct a reasonable search . . . until the consent is unequivocally withdrawn." Id. at 85, 521 S.E.2d at 308; see also Lawrence v. Commonwealth, 17 Va. App. 140, 146, 435 S.E.2d 591, 595 (1993) (finding that an appellant's conduct "'[fell] far short of an unequivocal act or statement of withdrawal, something found in most withdrawal of consent cases'" (quoting United States v. Alfaro, 935 F.2d 64, 67 (5th Cir. 1991) (citations omitted in original))).

Black's Law Dictionary defines "unequivocal" as "[u]nambiguous; clear; free from uncertainty." Black's Law Dictionary 1563 (8th ed. 2004). We find no articulable bright line rule in Virginia case law that defines precisely what acts or statements are necessary to constitute "unequivocal" withdrawal of consent to a search. However, past cases of this Court involving withdrawal of consent are instructive and provide a framework to discern what acts or statements are necessary for the withdrawal of consent to be "unequivocal."

In McNair, this Court held that a search was valid because the defendant failed to unequivocally withdraw his consent. 31 Va. App. at 86, 521 S.E.2d at 308. In that case, the defendant reported a robbery in progress at his apartment to the police. Id. at 80, 521 S.E.2d at 305. In response to defendant's request, police officers, as part of their investigation of the alleged robbery, searched the defendant's two-level apartment and found no robbers inside. Id. at 80-81, 521 S.E.2d at 305-06. Subsequently, another office arrived and asked the first officers whether they had searched for clues to the robbery. Id. at 81, 521 S.E.2d at 306. This same officer then "went upstairs 'specifically looking for evidence that the robbers might have dropped or left behind.'" Id. In the defendant's bedroom, the officer found a test tube containing cocaine. Id. In a motion to suppress, the defendant challenged the officer's search of

- 8 -

the upstairs of the apartment claiming the officer had no authority to search that area.  Id. at 80-81, 521 S.E.2d at 305-06.  This Court held that the trial court did not err in denying the defendant's motion to suppress because the defendant originally consented to the search and "[a]t no point did he attempt to restrict or terminate the officers' investigation of his residence, which he had requested."  Id. at 83, 521 S.E.2d at 307.  The Court found that the defendant did not object to the officer going upstairs, and "[f]rom this evidence, the trial court reasonably inferred that [the defendant] (1) consented to the officers' presence in his apartment for the purpose of investigating the robbery, (2) observed the detective go upstairs, and (3) knew that the detective was searching for clues to the robbery."  Id.

In another case in which this Court has considered whether withdrawal of consent to a search has occurred, in Lawrence, this Court held that a defendant had not withdrawn consent to search his front left pocket after the defendant told an officer he had nothing in his pocket other than tissues and keys, removed the items for the officer, and then placed his hand back into his pocket.  17 Va. App. at 142-43, 435 S.E.2d at 592.  This Court held, "[t]he evidence shows that appellant made no objection to the officer's questioning and made no statement withdrawing his prior consent to search his person for illegal narcotics or weapons.  Appellant made no attempt to leave or move away when the officer began to feel the appellant's left front pocket."  Id. at 146, 435 S.E.2d at 594.

In contrast, this Court found in Camden v. Commonwealth, 17 Va. App. 725, 441 S.E.2d 38 (1994), that a defendant did effectively withdraw consent to a search.  In Camden, after initially consenting to a pat-down search, the defendant "pulled away, placed his hand on his wallet and stated that [the officer] had no right to search it."  Id. at 726, 441 S.E.2d at 39.  Other unpublished cases in which the Court has found unequivocal withdrawal of consent have

involved similar words or actions.[2]  See Ellison v. Commonwealth, No. 1619-01-2, 2002 Va. App. LEXIS 337, at *3 (June 11, 2002) (finding withdrawal of consent where the defendant said, "You can't go in my pockets.  You can't go in my pockets," and pulled back from the officer abruptly); Jackson v. Commonwealth, No. 0036-96-2, 1997 Va. App. LEXIS 654, at *4 (Nov. 4, 1997) (stating that a defendant's flight from officers "implied a withdrawal of consent" to a search of his person); Commonwealth v. Johnson, No. 0298-96-1, 1996 Va. App. LEXIS 444, at *4 (June 25, 1996) (holding that the trial court did not err in finding that the accused had withdrawn his consent to a search of his person when he "pushed back from the porch railing [where he was standing while being searched] and bumped into [the police officer, knocking him slightly off balance").

In addition to holding that withdrawal of consent must be unequivocal, this Court has held that the initial "'[c]onsent to a search . . . must be unequivocal, specific and intelligently given . . . .'" Lawrence v. Commonwealth, 40 Va. App. 95, 102, 578 S.E.2d 54, 58 (2003) (quoting Jean-Laurent v. Commonwealth, 34 Va. App. 74, 78, 538 S.E.2d 316, 318 (2000)). This determination is "a question of fact, hinging on *the totality of the circumstances*." Barkley v. Commonwealth, 39 Va. App. 682, 696, 576 S.E.2d 234, 241 (2003) (emphasis added).  To be unequivocal, consent "'need not be oral.'" Lawrence, 40 Va. App. at 102, 578 S.E.2d at 58 (quoting Jean-Laurent, 34 Va. App. at 78, 538 S.E.2d at 318).  Unequivocal consent has been found based on actions alone, such as turning and "placing [one's] hands against the wall without

---

[2] "Although an unpublished opinion of the Court has no precedential value, a court . . . does not err by considering the rationale and adopting it to the extent it is persuasive." Fairfax Cnty. Sch. Bd. v. Rose, 29 Va. App. 32, 39 n.3, 509 S.E.2d 525, 528 n.3 (1999) (*en banc*) (citation omitted); see also Rule 5A:1(f) ("The citation of judicial opinions, orders, judgments, or other written dispositions that are not officially reported . . . is permitted as informative, but shall not be received as binding authority.").

prompting" in response to a specific request. Bynum v. Commonwealth, 23 Va. App. 412, 417, 477 S.E.2d 750, 753 (1996).

In a similar context involving the concept of waiver, and then the subsequent withdrawal of the waiver, of a constitutional right, the Supreme Court of Virginia has held that "invocation of the right to counsel must be clear, unambiguous, and unequivocal." Zektaw v. Commonwealth, 278 Va. 127, 136, 677 S.E.2d 49, 53 (2009). To satisfy that standard, an accused "'must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'" Id. at 136, 677 S.E.2d at 54 (quoting Davis v. United States, 512 U.S. 452, 459 (1994)).

These cases suggest that the unequivocal waiver of a constitutional right need not be oral and can be accomplished by actions, statements, or a combination of the actions and statements. As with invocation of the right to counsel, withdrawal of consent must be such that a reasonable police officer in the circumstances would understand the acts or statements to be withdrawal of consent to the search. See, e.g., id. at 136, 677 S.E.2d at 53-54. Moreover, withdrawal of consent must be unambiguous, when viewed from the totality of the circumstances.

In this case, the trial court found that grandmother did communicate with father over the phone and relay this conversation to the police. Based on father's and Pritchett's testimony describing the phone conversation, the trial court concluded that grandmother "repeat[ed] for the officers what [father] said, which generally seemed to consist of the fact that he was the owner of the vehicle and didn't want the vehicle searched." We hold that the trial court's finding that grandmother repeated to the police that father was the owner of the vehicle and used father's alleged ownership of the vehicle as the basis for withdrawing her consent was plainly wrong and without a factual basis in the record.

Nowhere in father's or Pritchett's testimony did either state that father said *he* was the owner of the vehicle to the police, nor is there anything in the record to support the conclusion that grandmother repeated such a statement to the police. Moreover, on brief, defendant concedes that father never directly communicated his ownership of the car to the police, because officers, who were already searching the car, refused to speak with him. As a result, we hold that there was no evidence to support the trial court's finding that grandmother, in repeating her telephone conversation with father, told the police that father was the owner of the vehicle.

In addition, while the evidence may well support the trial court's finding that grandmother communicated to the police father's desire that the car not be searched, the trial court's conclusion that these statements implicitly made known to the police that grandmother *herself* also did not want the car to be searched is plainly wrong. Not once does the record reveal, either directly or indirectly, that grandmother was withdrawing *her* prior reliable authorization and consent to search the vehicle. Viewed from the totality of the circumstances, grandmother never stated unequivocally that she desired the search to stop. The testimony was clear that grandmother was repeating father's words and relaying father's words to the police. From these circumstances, a reasonable police officer would have interpreted the statements relayed by grandmother as those of *father*, not of grandmother. At this point, only grandmother had apparent authority to withdraw her consent; father's withdrawal of consent to the search was of no import to the officers, as they would have reasonably believed father had no authority over the car. Without the knowledge that father was the true owner of the car, a reasonable police officer would be legally justified to regard the desires of some unknown third party as irrelevant.[3]

---

[3] Additionally, the fact that police officers had the ability to establish the identity of the owner of the car using electronic means, but did not do so, has no impact on the resolution of this

Furthermore, the trial court erred in relying upon its finding that grandmother's "demeanor changed" in order to support its conclusion that she had withdrawn her consent to the search. Prior cases finding withdrawal of consent based on actions required more than a change in demeanor; instead, affirmative, unambiguous actions such as pulling away and placing a hand on the object to be searched were present. See, e.g., Camden, 17 Va. App. at 726, 441 S.E.2d at 39 (holding that a defendant withdrew his consent to a pat-down search when he "pulled away, placed his hand on his wallet and stated that [the officer] had no right to search it"). The appearance that one is upset is not sufficient by itself to withdraw consent to a search.

From the record in the instant case, we find no statement or action by which grandmother unequivocally withdrew her consent to the search. In making this determination, we acknowledge that the conditions confronting the grandmother were fluid and complex. However, in light of the unusual and distinct circumstances of this case, we hold that because grandmother merely repeated father's statements that *he* did not want the search to take place and never stated explicitly that *she*, the individual with apparent authority to withdraw consent, did not want the search to take place, grandmother's statements did not constitute an unequivocal withdrawal of consent.

### III. Conclusion

Because the trial court erred in granting defendant's motion to suppress, we reverse the suppression order and remand for trial.

Reversed and remanded.

---

case. See Georgia v. Randolph, 547 U.S. 103, 122 (2006) (stating that "it would be unjustifiably impractical to require the police to take *affirmative* steps to confirm the actual authority of a consenting individual whose authority was apparent" (emphasis added)).

Elder, J., concurring in part, dissenting in part, and dissenting from the judgment.

I concur in Parts I and II(A) of the majority's opinion. However, I disagree with the majority's holding that "grandmother's statements did not constitute an unequivocal withdrawal of consent." Rather, I believe "the typical reasonable person [would] have understood by the exchange between the officer and [grandmother]" that grandmother, upon father's instruction, was unequivocally withdrawing her prior consent to search father's vehicle. Florida v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04, 114 L. Ed. 2d 297, 302 (1991). Therefore, I respectfully dissent from that portion of the majority's opinion reversing the trial court's ruling on the motion to suppress.

I take no issue with the majority's thorough recitation of the law pertaining to the withdrawal of consent to a search under the Fourth Amendment. Instead, my disagreement with the majority stems from its holding that the record does not "reveal, either directly or indirectly, that grandmother was withdrawing *her* prior reliable authorization and consent to search the vehicle." Such a holding ignores the clear testimony describing what grandmother conveyed to the officers. The majority fixates on the fact that grandmother was repeating father's instructions to the police. This inquiry delves into the motives of the person with apparent authority, and I can find no case law in our jurisprudence supporting such an analysis.

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness – what would the *typical reasonable person* have understood by the exchange between the officer and the [individual]?" Id. (emphasis added). Here, father testified that he overheard grandmother tell the officers to "not do anything until [he] g[o]t there." Hillary Pritchett confirmed this, testifying that grandmother repeated father's instructions "to not do anything, to tell [the officers] that [father] would be there in 20 minutes." This testimony, viewed objectively and in the light most favorable to Ferrell, establishes that

- 14 -

grandmother told the officers to stop searching the vehicle until father arrived. It is irrelevant that grandmother was repeating father's instructions. The reasonableness inquiry does not permit an examination of why the individual withdrew consent or who told her to do so. It asks only "whether a reasonable person would have concluded [grandmother's statement] amounted to a withdrawal of consent." United States v. Sanders, 424 F.3d 768, 774 (8th Cir. 2005).

Although the record does not establish grandmother's exact words used, the testimony of Ferrell's family members reveals the content of those words. Further, the record establishes that after granting the officers her permission to search the vehicle, grandmother contacted father to inform him of the search of the vehicle. From this testimony, the fact finder could reasonably infer that grandmother deferred to father's authority regarding whether a search should be conducted and adopted father's view as her own.[4] Because Ferrell is the prevailing party in the ruling on the motion to suppress, we must afford him the benefit of these favorable inferences. See Ward v. Commonwealth, 47 Va. App. 733, 742-43, 627 S.E.2d 520, 525 (2006). Viewed in this light, a reasonable person would determine that grandmother did not want the police to search the vehicle because father, the vehicle's true owner, did not want them to search it. Nothing more is required.

The majority isolates grandmother's changed demeanor and holds that a "finding of withdrawal of consent based on actions required more than a change in demeanor." The majority overlooks the fact that grandmother's change in demeanor did not occur in isolation, but rather in conjunction with her statements to the police and contact with father. "[R]egard[ing] as true all credible evidence favorable to the [prevailing party] and all fair inferences reasonably deducible

---

[4] It is irrelevant that grandmother thought the vehicle was hers. Whatever possessory interest grandmother believed she had in the vehicle, it is clear that she acceded to father's authority when she called him and repeated his instructions to the officers.

therefrom," Lea v. Commonwealth, 16 Va. App. 300, 303, 429 S.E.2d 477, 479 (1993), the logical inference from grandmother's change in behavior is that she realized she gave the police an instruction she was not supposed to give. Upon contacting the vehicle's true owner and realizing her error, she became upset and sought to correct the situation by relaying father's instructions to the police.[5]

In sum, had the record proved grandmother showed ambivalence or hesitation as she gave the instruction, the record would support the majority's conclusion that grandmother equivocated in following father's instructions to withdraw her consent to the search of the vehicle. However, because such evidence is lacking, I would rely on the content of grandmother's words, which conveyed to the officers that they were not to search the vehicle until father returned. In this particular case, I do not believe the mere act of repeating these instructions undermines the trial court's order suppressing the incriminating evidence.

For these reasons, I would uphold the trial court's ruling suppressing the evidence and I respectfully dissent from the majority's ruling reversing the trial court's suppression of the evidence.

---

[5] To me, a reasonable person would have interpreted grandmother's change in demeanor as a clear indication that she did not have authority to consent to the search and was in contact with the vehicle's true owner. However, the officers in this case remained willfully ignorant of the identity of the true owner in order to preserve the validity of the prior consent. The trial court noted this disconcerting fact in rendering its order to suppress the evidence. The majority does not give sufficient credit to what a reasonable person would, and what the trial court did in fact, interpret from all the circumstances present.