477 S.E.2d 14

**Douglas McGEE, Jr.**

v.

**COMMONWEALTH of Virginia.**

**Record No. 0104–95–2.**

Court of Appeals of Virginia,
Richmond.

Oct. 22, 1996.

Rehearing En Banc Granted Nov. 21, 1996.

Coleman, J., filed dissenting opinion.

Cullen D. Seltzer, Assistant Public Defender (David J. Johnson, Public Defender, on brief), for appellant.

Richard H. Rizk, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

Present: MOON, C.J., COLEMAN, J., and COLE, Senior Judge.

COLE, Senior Judge.

Douglas McGee, Jr. appeals his bench trial conviction for possession of cocaine with intent to distribute in violation of Code § 18.2–248. McGee contends that he was unlawfully seized in violation of the Fourth Amendment of the United States Constitution and that the trial court erred by refusing to suppress the cocaine that was found as a result of the illegal seizure. We hold that the police officers did not effectuate a seizure for Fourth Amendment purposes prior to the time the defendant freely and voluntarily consented to the search resulting in the recovery of the cocaine. Accordingly, we affirm the defendant's conviction.

## I.

The facts are not in dispute. On July 31, 1994, around 5:00 p.m., Officer Norris I. Loperl of the Richmond Police Department received a radio dispatch that "a black male wearing a white t-shirt, black shorts and white tennis shoes" was selling drugs at the corner of 5001 Government Road, in Richmond. The dispatch was based on a report from an anonymous informant. Approximately two minutes after receiving the dispatch, Loperl and two other officers, all of whom were in uniform, arrived at the location in two marked police cruisers. The only persons observed at the location were the defendant and a female companion.

After parking the police cruisers, the officers approached the defendant, who was sitting on a small porch in front of a store. Officer Loperl testified that they did not block the defendant's path in any direction or draw their weapons. Loperl testified that he stated to the defendant, while speaking in the same tone of voice he was using while testifying in court, "I had received a call that you was on this corner selling drugs and said you matched the description." According to Loperl, the defendant was free to leave, although the officer did not expressly so inform the defendant.

Loperl then "asked [the defendant] could I pat him down to make sure he didn't have any weapons on him." The defendant responded by standing up and extending his arms in front of him with both fists clenched. The fists were clenched so tightly the officer could not see what was in them. Loperl testified that the defendant could have been holding a "small pocket knife" or "a razor" in his closed fists. Therefore, after patting down the defendant and finding no weapons, Loperl asked the defendant to open his hands. Although Loperl could not remember the exact words used, he testified that, "I know I asked him. I know I didn't tell him. I asked him." The defendant opened his hands, which contained money, a torn ziplock bag, and "a little piece of white substance." Loperl placed the defendant under arrest. In the search of the defendant incident to that arrest, Loperl found twenty-five bags containing crack cocaine.

In a written opinion, the trial judge concluded that the information provided to Loperl, coupled with Loperl's observations confirming the reliability of the anonymous tip, provided Loperl with a reasonable, articulable suspicion that the defendant was involved in criminal activity. Although the defendant's encounter with the police amounted to an investigatory stop, the police neither restricted the defendant's movement nor engaged in coercive conduct. Under these circumstances, the trial judge found that the defendant's consent to Loperl's request was valid and the fruits of the search were admissible.

## II.

The defendant contends that the trial court erred in failing to grant his suppression motion because: (1) he was seized without reasonable, articulable suspicion when he was approached by three police officers and ordered to submit to a pat down search; (2) Officer Loperl did not have a reasonable fear for his safety to justify a pat down; and (3) the defendant did not freely and voluntarily consent to a pat down of his person or a search of the contents of his hands. The Commonwealth responds that the defendant's initial encounter with the police did not implicate the Fourth Amendment because it was not a seizure, and the defendant freely and voluntarily consented to the pat down and search of his hands.

In reviewing a trial court's denial of a motion to suppress, "[t]he burden is upon [the defendant] to show that this ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error." *Fore v. Commonwealth,* 220 Va. 1007, 1010, 265 S.E.2d 729, 731, *cert. denied,* 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980). We are bound to review *de novo* the "ultimate questions of reasonable suspicion and probable cause to make a warrantless search," which involve "mixed question[s] of law and fact." *Ornelas v. United States,* 517 U.S. ——, ——, 116 S.Ct. 1657, 1659, 134 L.Ed.2d 911 (1996). In performing such analysis, we must "review findings of historical fact only for clear error and ... give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.,* at ——, 116 S.Ct. at 1663. In a similar manner, we analyze a trial judge's determination that the Fourth Amendment was or was not implicated by reviewing the judge's factual findings for clear error and applying *de novo* our own legal analysis of the question. *See Satchell v. Commonwealth,* 20 Va.App. 641, 648, 460 S.E.2d 253, 256 (1995) (*en banc* ). *See also Watson v. Commonwealth,* 19 Va.App. 659, 663, 454 S.E.2d 358, 361 (1995).

In *Baldwin v. Commonwealth,* 243 Va. 191, 196, 413 S.E.2d 645, 647 (1992), the Supreme Court of Virginia fully

reviewed and explicated the requirements of a "seizure" implicating the Fourth Amendment:

> We adhere to the view that a person is "seized" only when, by means of physical force or show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

(Citation omitted). "In determining whether police detention constitutes a seizure by investigatory stop, 'cognizance must be taken of the "totality of the circumstances—the whole picture." ' If that determination is negative, the detention is not unreasonable and, hence, does not implicate the Fourth Amendment." *Id.* at 199, 413 S.E.2d at 649 (citations omitted). Therefore, we must look to the "totality of the circumstances" and "the whole picture" to determine whether Officer Loperl by means of physical force or show of authority in some way restrained the defendant's liberty.

In *Baldwin,* police officers responded to a report of "drunks in public" and observed the accused and another person walking toward some apartments. *Id.* at 193–94, 413 S.E.2d at 646. Although the evidence revealed that the officer shined a "floodlight" on the individuals and told them to "come over here," the Court held that these actions did not constitute a seizure because there was "no evidence of 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " *Id.* at 199, 413 S.E.2d at 649 (quoting *United States v. Mendenhall,* 446

U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)). *See also Lawrence v. Commonwealth,* 17 Va.App. 140, 435 S.E.2d 591 (1993), *aff'd,* 247 Va. 339, 443 S.E.2d 160 (1994) (holding that suspect was not "seized" when told by police to remove his hands from his pockets).

■ The uncontroverted evidence in this case establishes that the initial encounter between the defendant and the police was consensual and that the officers did not seize him for Fourth Amendment purposes. The officers approached the defendant in a public place and initiated a conversation in the course of investigating the anonymous report of drug dealing. The police officers had a duty to investigate the complaint of criminal activity, and it was reasonable for them to question the defendant, who was the only male at the reported location. Although the three officers who confronted the defendant were in uniform, they made no show of force. They did not "run up to" the defendant and did not draw their weapons. According to Loperl, the officers were standing in front of the defendant but did not block him from leaving in any direction. Loperl testified that he spoke to the defendant in the same tone of voice he was using while testifying and that none of the officers touched the defendant before he consented to the pat down search. Loperl approached the defendant, explained that the police had received a report of someone selling drugs on that street corner, and said that the defendant matched the description. Loperl, however, did not accuse the defendant of selling drugs. Rather, Loperl simply told the defendant the reasons for approaching and asking him questions. Under these circumstances, we hold that no Fourth Amendment seizure occurred.

Ignoring the "totality of the circumstances" and the "whole picture" and relying solely upon Loperl's statement to the defendant that he matched the tipster's description, the dissent finds that "a reasonable person would [not] feel free to leave after being approached by a police officer and informed that he was suspected of drug dealing." The effect of the dissenting opinion is to hold that a Fourth Amendment "sei-

zure" occurs *per se* any time a police officer advises a suspect the police had received information that the suspect had been selling illegal drugs at a particular location. In accordance with this view, without implicating the Fourth Amendment, the police could not investigate a citizen complaint and respond truthfully to a suspect's questions about why the police were present and had approached that individual. In *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), the United States Supreme Court denounced the decision of a Florida court adopting a *per se* rule pertaining to Fourth Amendment seizures, and stated:

> We adhere to the rule that, in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.

*Id.* at 439, 111 S.Ct. at 2389.

■ Furthermore, the dissent focuses upon the possible effect upon the suspect of such a statement when made by a police officer. The Supreme Court has emphasized, however, the objective nature of the test to be applied in determining if a person has been seized within the meaning of the Fourth Amendment.

> While the test is flexible enough to be applied to the whole range of police conduct in an equally broad range of settings, it calls for consistent application from one police encounter to the next, regardless of the particular individual's response to the actions of the police. The test's objective standard—looking to the reasonable man's interpretation of the conduct in question—allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment. This "reasonable person" standard also ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached.

*Michigan v. Chesternut,* 486 U.S. 567, 574, 108 S.Ct. 1975, 1979–80, 100 L.Ed.2d 565 (1988) (citation omitted). "[T]he 'reasonable person' test presupposes an *innocent* person." *Bostick,* 501 U.S. at 438, 111 S.Ct. at 2388. Thus, the fact that a person possessing drugs might be more inclined to believe, upon being advised of the information a police officer possesses, that he had no choice but to cooperate does not necessarily mean that a "seizure" has occurred.

## III.

Our conclusion that the defendant was not "seized" when he consented to the pat down and when Loperl asked him to open his hands disposes of the defendant's contention that the pat down was unjustified by the officer's reasonable fear for his safety. Remaining, however, is the issue of the voluntariness of the defendant's consent to the pat down search of his person and to open his hands.

A search conducted pursuant to a valid consent is constitutionally permissible. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). "The test of a valid consent search is whether it was 'freely and voluntarily given.'" *Deer v. Commonwealth,* 17 Va.App. 730, 734, 441 S.E.2d 33, 36 (1994) (quoting *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968)). The consent need not be given orally but can be determined from the actions and behavior of the defendant. *See Hairston v. Commonwealth,* 216 Va. 387, 219 S.E.2d 668 (1975).

The evidence clearly established that Loperl requested permission to pat down the defendant. Although Loperl could not remember the exact words he used, he insisted that he did not command the defendant to open his hands: "I know I asked him. I know I didn't tell him. I asked him." The defendant did not respond verbally, but he voluntarily consented to this request by standing up and stretching out his arms to facilitate the search. When the officer asked the defendant to open his clenched fists, the

defendant, without objection, opened both hands. " 'Voluntarily responding to a police request, which most citizens will do, does not negate "the consensual nature of the response." ' " *Lawrence*, 17 Va.App. at 144, 435 S.E.2d at 593 (citations omitted).

Upon observing the white substance in the defendant's hand, Loperl had probable cause to arrest him for the possession of narcotics. Therefore, the subsequent search of the defendant which led to the discovery of twenty-five bags of cocaine was lawful as incident to a valid arrest. *See Buck v. Commonwealth*, 20 Va.App. 298, 304, 456 S.E.2d 534, 537 (1995).

For the foregoing reasons, we affirm the appellant's conviction.

*Affirmed.*

COLEMAN, Judge, dissenting.

I respectfully disagree with the majority's holding that the defendant's encounter with the police was consensual and that he was not "seized" for Fourth Amendment purposes. The trial court found, and upon *de novo* review I agree, that a seizure occurred when the three uniformed police officers arrived in two marked police cruisers, confronted the defendant, and told him that he had been reported for and was suspected of selling drugs at that location. A seizure occurs when an individual is either physically restrained or has submitted to a show of authority. *California v. Hodari D.*, 499 U.S. 621, 625, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991). Here, the defendant submitted to a show of authority.

In my opinion, no reasonable person would have believed he was free to leave after being told by a police officer that he had been identified as the person who was selling drugs. Thus, although the police officers had the duty to investigate the anonymous complaint of criminal activity, without confirming or having some independent reason to suspect the defendant of a crime, they had no basis to lawfully detain or search the defendant. Nevertheless, they did so by a show of force

and by telling the defendant that he had been reported for and was suspected of selling drugs. Therefore, in my opinion, the defendant's "consent" to relinquish the drugs to the officers was not voluntary but was compelled by his being illegally detained. Because the drugs should have been suppressed as the "fruits" of an illegal detention, I would reverse the conviction.

Officer Loperl testified that he approached the defendant immediately after exiting his vehicle and told the defendant that he had been reported as the person who was selling drugs and that he matched the description of the individual who had been reported as selling drugs.

Q: When you approached [the defendant], what did you say to [him] first?

A: I stated to him that I had received a call that [he] was on this corner selling drugs and [that he] matched the description.

At a minimum, Officer Loperl's statement identifying the defendant as matching the description informed the defendant that he was a suspect.

As the majority correctly states, a consensual encounter between a law enforcement officer and a citizen in which the officer identifies himself and states that he is conducting a narcotics investigation is not a seizure within the meaning of the Fourth Amendment. However, when the police expressly tell an individual that they have received information that the individual is engaging in criminal activity, the police "convey a message that compliance with their requests is required," *Florida v. Bostick,* 501 U.S. 429, 435, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991), and "that failure to cooperate would lead only to formal detention." *United States v. Berry,* 670 F.2d 583, 597 (5th Cir.1982). *See also Florida v. Royer,* 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983) (holding that the accused was seized "when the officers identified themselves as narcotics agents, *told Royer that he was suspected of transporting narcotics,* and asked him to accompany them to the police room") (emphasis added); *United States v.*

*Glass*, 741 F.2d 83, 85 (5th Cir.1984) (holding that the accused was seized when "the officers informed [him] that [he] was suspected of illegal activity"); *United States v. Manchester*, 711 F.2d 458, 460 (1st Cir.1983) (finding a seizure where the agents confronted the accused with their suspicions that he was involved in drug trafficking); *State v. Ossey*, 446 So.2d 280, 285 (La.) (holding that there was a seizure where the accused "was told that he was the focus of investigation"), *cert. denied*, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984).

Officer Loperl's statement to the defendant did not, as the majority states, merely explain to him that the officers were conducting a *general* investigation in response to a report of drug dealing. Rather, Loperl specifically identified the defendant as the subject of their investigation by telling the defendant that he had been reported as the person selling drugs and that he matched the description of the person who had been reported selling drugs at that particular location. *See United States v. Saperstein*, 723 F.2d 1221, 1226 (6th Cir.1983) (finding a seizure where the agent stated "that he had information concerning the appellant and his probable activities as a drug courier"); *Wilson v. People*, 34 Cal.3d 777, 195 Cal. Rptr. 671, 680, 670 P.2d 325, 334 (1983) (finding a seizure where "the officer advised [the accused] that he had information that [the accused] was carrying a lot of drugs"), *cert. denied*, 466 U.S. 944, 104 S.Ct. 1929, 80 L.Ed.2d 474 (1984). Officer Loperl did not provide any details of the description given to the police. He did not qualify his initial statement or inform the defendant that he was free to leave. The unmistakable message conveyed to the defendant was that the officers had reason to detain him by virtue of the information they possessed. By their show of authority as law enforcement officers who suspected the defendant of selling drugs, and having so informed him, the defendant was seized.

I do not, contrary to the majority's assertion, propose a *per se* rule that a seizure occurs every time a police officer "advises a suspect the police had received information that the suspect had been selling illegal drugs at a particular location." Whether a seizure occurs depends upon whether, under all the circumstances, a reasonable person would feel free to leave. I concede, however, that being specifically identified by a police

officer as a suspect in a particular crime which the officer is investigating is probably, in most cases, the most significant factor among the "totality of the circumstances" to determine whether a reasonable person would feel free to leave.[1] In my judgment, however, it is less than candid for the majority to conclude that a reasonable person would have felt that he was free to leave after being told by one of three uniformed police officers that he was suspected of and had been reported selling drugs. To the contrary, as the trial court, I would hold that under such circumstances, a reasonable person would not feel free to leave. A reasonable person would have believed, as did this defendant, that he was being detained and that he was required to open his hands as requested by the officers who detained him.

The majority relies upon the Virginia Supreme Court's holding in *Baldwin v. Commonwealth*, 243 Va. 191, 413 S.E.2d 645 (1992), to overrule the trial court's finding of an "investigatory detention" and to hold that the encounter was consensual. The facts in *Baldwin* are distinguishable from the facts here and the holding there does not support the majority's decision. The one officer in *Baldwin* shone his search light on two persons in an apartment parking lot and asked them to come to his cruiser. The officer did not suggest or tell them they were suspected of anything or even that he was investigating a complaint concerning persons reported as being drunk in public. Although *Baldwin* does not, in my view, support the majority's consensual encounter holding, the holding in *Baldwin* is relevant to the extent it requires that we must give deference to the trial court's factual findings in determining whether an officer's actions constituted a show of authority that would constitute a seizure. *See Satchell*, 20 Va.App. at 650, 460 S.E.2d at 257. Thus, here, we must give deference to the trial court's factual finding that a seizure occurred in this case. *See Ornelas v. United States*, 517 U.S. —, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). In addition to Officer Loperl's initial statement to the defendant, the evi-

---

1. Other factors that would be considered include *inter alia* the number of officers present, whether the officers displayed weapons, and physical circumstances of the encounter.

dence proved that three uniformed officers arrived in two marked police cruisers and confronted the defendant. *See Satchell,* 20 Va.App. at 650, 460 S.E.2d at 257. Moreover, the trial court had the opportunity to evaluate the tone of voice Officer Loperl used in speaking to the defendant. *See id.* at 648, 460 S.E.2d at 256 (holding that "[t]he trial court has before it the living witnesses and can observe their demeanors and inflections"). In my view, these facts support the trial court's legal determination that a reasonable person would not have felt free to leave. Therefore, I would hold that the police officers effectuated a seizure for Fourth Amendment purposes.

Because the record supports the trial court's finding, and proves upon my *de novo* review that the officers' show of authority by their words and actions constituted a seizure of the defendant, the question then is whether the officers had a reasonable basis to suspect the defendant of criminal activity. Contrary to the trial court's finding, the evidence is not sufficient to prove that the investigatory detention was "justifiable." In *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the United States Supreme Court held that anonymous information that is "sufficiently corroborated" may provide a law enforcement officer with reasonable suspicion justifying an investigative stop. *Id.* at 331, 110 S.Ct. at 2416. "[A]lthough the police do not have to verify every detail provided by an anonymous informant, '[s]ignificant aspects of the informer's information must be independently corroborated.'" *Gregory v. Commonwealth,* 22 Va.App. 100, 106, 468 S.E.2d 117, 120 (1996) (quoting *Bulatko v. Commonwealth,* 16 Va.App. 135, 137, 428 S.E.2d 306, 307 (1993)).

In *Gregory,* the police officer received an anonymous tip that an individual fitting a certain description was flagging down cars and selling drugs. When the officer arrived at the reported location, he confirmed that the accused matched the detailed description provided by the informant. *Id.* at 104, 468 S.E.2d at 119. The officer testified that the accused acted nervously when he saw the officer and that the location was known for drug activity. *Id.* at 108, 468 S.E.2d at 121. We held in *Gregory* that based upon the information the officer received and his own independent observations, the anony-

mous tip was sufficiently corroborated and there was reasonable suspicion to conduct a *Terry* stop. *Id.* at 109, 468 S.E.2d at 121–22.

Here, Officer Loperl received an anonymous tip that "a black male wearing a white t-shirt, black shorts and white tennis shoes" was selling drugs. Contrary to the trial court's finding, the evidence shows that Officer Loperl did not verify that the defendant matched the informant's description. According to Officer Loperl, when he arrived at the location he did not observe the defendant before approaching him.

Q: At any time, did you stay behind and watch [the defendant's] conduct prior to approaching him?

A: No, sir.

Q: Just to repeat that question, prior to—once you got to the location . . . after receiving the information, you did not stay and watch to see what he was doing. Is that correct?

A: No, sir, I didn't.

\* \* \* \*

Q: But he was wearing a white t-shirt, black shorts and tennis shoes?

A: I don't know.

Furthermore, unlike the situation in *Gregory*, there was no evidence that the reported location was known as an area of high drug activity or that the defendant exhibited any suspicious or furtive behavior.

On these facts, no credible evidence supports the trial court's finding that the investigatory stop was "justifiable." The police officers had no reason to suspect that the defendant was selling drugs other than the anonymous report. No evidence revealed the identity of the anonymous tipster or explained how the tipster obtained the reported information, and the record does not otherwise indicate that his conclusory assertion was worthy of being believed. On this record, the police officers merely accepted an anonymous tipster's conclusory statement that a person at a designated location was selling drugs. Without verifying the description or reported

criminal activity provided by the tipster, the officers approached the first individual they encountered and informed him that he was suspected of selling drugs. The officers did not possess a basis to conclude that the anonymous informant was reliable and, therefore, did not have reasonable and articulable suspicion to conduct a *Terry* stop. Because the initial seizure of the defendant was unlawful, the cocaine that was subsequently obtained should have been suppressed as "fruit of the poisonous tree." *Commonwealth v. Ealy,* 12 Va.App. 744, 754, 407 S.E.2d 681, 687 (1991). Consent obtained as the result of an illegal detention is "not an independent source of the evidence, but rather [is] an exploitation of the unlawful [stop]." *Id.* at 757, 407 S.E.2d at 689.

Absent the cocaine, the evidence is insufficient as a matter of law to sustain the defendant's conviction. Accordingly, I would reverse the conviction and dismiss the charge.

## UPON A PETITION FOR REHEARING EN BANC BEFORE THE FULL COURT

On October 30, 1996, came the appellant, by court-appointed counsel, and filed a petition praying that the Court set aside the judgment rendered herein on October 22, 1996, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on October 22, 1996, is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellant shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.