# CIRCUIT COURT OF THE CITY OF ROANOKE

Commonwealth of Virginia

v.

Anthony Lydell Matthews

July 25, 1997

Case No. CR97-803

By Judge Jonathan M. Apgar

The defendant has moved to suppress the results of a search of his person occurring on March 6, 1997. For the reasons stated herein, that motion is granted.

*Facts*

The Defendant and two friends were briefly at an apartment located in Caru Apartments on Bennett Drive during daylight hours on March 6, 1997. The Defendant and his companions then entered a Honda automobile in the parking lot and saw a black vehicle they knew to be operated by the Vice Division of the Roanoke City Police Department. The black vehicle made a U-turn at the end of the parking lot and drove towards them. It stopped directly behind the Honda blocking the Defendant from backing out and leaving, which was the Defendant's intention. After some delay (the length of which is in controversy), the vice officers got out and approached the Honda automobile. The Defendant was asked if he would consent to a search of his person. His response was, "If I say no, you'll do it anyway." A search of his person outside of the automobile located crack cocaine in the sock on his right ankle.

The vice officer who testified, Detective Ford, said he had received a telephone call from an anonymous caller who stated that people were milling around the front of Caru Apartments and that drug trafficking was going on.

Detective Ford and two other officers drove over to observe the situation and see "what was up." They pulled in the parking lot of Caru Apartments, saw people standing around but nothing going on and then made a U-turn. At this time Detective Ford saw the Honda automobile with three occupants and that the engine was running. He pulled directly behind the Honda so the vice officers could "check on these people." Detective Ford agreed that the Honda was unable to move in any direction because of a sidewalk in the front, cars on either side, and the vice vehicle directly in back.

Detective Ford and the two other officers approached the Honda, and Detective Ford went to the driver, who was the Defendant, and asked for his identification. He further asked the Defendant if there was anything in the car that the police should know about. The answer was no. He asked the Defendant if he could search the person of the Defendant, and the response was as indicated above. Realizing that the response was "neither yes or no" to the search request, Detective Ford asked again. This time the Defendant got out and put his hands on the car and reportedly said, "Go ahead." The detective then searched the Defendant and arrested him for possession of cocaine with intent to distribute.

## Discussion

This case presents two issues.

1. Did the contact between Detective Ford and the Defendant constitute a voluntary encounter or a seizure?

2. Did the Defendant waive his Fourth Amendment rights and give a voluntary and intelligent consent to a warrantless search of his person?

*Issue 1*: A police officer may lawfully stop and frisk an individual if the officer possesses a reasonable suspicion, based on articulable facts, that the individual is, or is about to be, engaged in criminal activity. The standard for conducting such a detention is less than probable cause but more than an "inchoate and unparticularized suspicion or 'hunch'." *Gregory v. Commonwealth*, 22 Va. App. 100 (1996). A law enforcement officer does not implicate the Fourth Amendment by approaching a citizen in a public place for the purpose of asking the individual his name and address. Furthermore, a consensual encounter between the police and a citizen becomes a seizure for Fourth Amendment purposes, "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." In order for a seizure to occur, the police must restrain a

citizen's freedom of movement by the use of physical force or show of authority. *Ford v. City of Newport News*, 23 Va. App. 137 (1996). In determining whether police detention constitutes "seizure" by an investigatory stop, cognizance must be taken of the totality of the circumstances. If the determination is negative, detention is not unreasonable and hence does not implicate the Fourth Amendment. Police officers do not effectuate a seizure for Fourth Amendment purposes when they approach a defendant in a public place and initiate conversation in the course of investigating an anonymous report of drug dealing, as long as the officers make no show of force and they do not block the defendant from leaving in any direction. *McGhee v. Commonwealth*, 23 Va. App. 334 (1996).

In the instant case, the Defendant and his friends recognized the black vehicle as one belonging to vice officers. They watched it cruise the parking lot, turn around, and stop directly behind them. Everyone agrees that the Honda automobile had its engine running at that point and that the automobile and its occupants could not leave. Further, Detective Ford testified that although he had received an anonymous call about people in cars selling drugs at Caru Apartments, there was no information concerning the Defendant or a Honda automobile as being involved in that. Upon Detective Ford's arrival, he saw a group of people standing around but nothing going on. Finally, he seized upon the Honda automobile as the one to be "checked out" because its engine was running and it had three people in it.

Clearly, under totality of the circumstances, this was not a voluntary encounter. The Defendant was not free to leave by people he knew were law enforcement officers, and so, therefore, it was a seizure which triggers Fourth Amendment protection. Additionally, it was not an investigatory stop because Detective Ford had no information which directed him toward the Defendant or the Honda automobile, saw no illegal activity occurring, and arbitrarily picked out the Defendant as the individual to stop, only because the Defendant was doing no more than sitting in a Honda automobile in a public parking lot with the automobile engine running.

*Issue 2*: The question now becomes, has the Commonwealth shown whether valid consent was freely and voluntarily given? *Deer v. Commonwealth*, 17 Va. App. 730 (1994). To examine this, one must first put the question into the context that the initial seizure of the Defendant by Detective Ford does not fall within any exception to the warrant requirement. Further, the first response from the Defendant was recognized as equivocal and ambivalent by Detective Ford. The evidence is then in conflict if the Defendant got out, put his hands on the car, and said "Go ahead" or said a

second time, "If I say no, you'll do it anyway." Given that the Defendant would not even be put in the position of having to give consent but for the immediately proceeding unlawful detention, the Court finds that even under Detective Ford's testimony, there has not been a voluntary and intelligent waiver of the Defendant's Fourth Amendment rights. Under the totality of all circumstances, the Court finds that the Commonwealth has not met its burden to prove the consent was voluntary.

## Conclusion

For the reasons stated and authority cited, the warrantless search of the Defendant was *per se* unreasonable and violative of the Fourth Amendment, and the Commonwealth cannot meet its burden of proving an acceptable exception to the warrant requirement. Therefore, this Court grants the motion to suppress, and the Commonwealth is directed not to use any items obtained as a result of the search of the Defendant on March 6, 1997, in any prosecution against him.