COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Coleman and Senior Judge Cole
Argued at Richmond, Virginia

GERALD McGHEE

MEMORANDUM OPINION[*] BY
v.          Record No. 0418-97-2          JUDGE SAM W. COLEMAN III
                                          MARCH 3, 1998
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Robert W. Duling, Judge

Jonathan David (Joseph D. Morrissey; James T.
Maloney; Morrissey, Hershner & Jacobs, on
brief), for appellant.

Ruth Ann Morken, Assistant Attorney General
(Richard Cullen, Attorney General, on brief),
for appellee.


City of Richmond police detectives searched Gerald McGhee as

he disembarked from a bus at a bus terminal in Richmond and

recovered from him several rocks of cocaine. McGhee was

convicted in a bench trial for possession of cocaine with the

intent to distribute. On appeal, McGhee contends the trial court

erred in denying his motion to suppress the cocaine, because, he

asserts, he was unlawfully seized in violation of the Fourth

Amendment, and he did not voluntarily consent to the search.

Finding no error, we affirm the conviction.

I.  BACKGROUND

When the evidence is viewed in the light most favorable to

the Commonwealth, the party prevailing at trial, see Greene v.

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139-40 (1994), it proved that City of Richmond Police Detectives Stephanie Ruffin and Ronnie Armstead observed McGhee, who was carrying a blue duffel bag, and another person exit a bus at the Richmond Greyhound Bus Terminal. As he exited, McGhee looked around the terminal platform in a manner that Ruffin thought suspicious. McGhee and the other man spoke briefly and then separated.

Ruffin approached McGhee, identified herself, displayed her badge, and asked McGhee if she could speak with him. McGhee replied, "sure," and walked a few feet away from Ruffin. Believing that McGhee was going to a place where he could speak privately with her, Ruffin advised him that he "didn't have to go anywhere" in order for them to talk. Ruffin then asked where McGhee was going, to which he responded Charlotte. She next asked McGhee for identification and observed McGhee's hand begin to shake as he was handing it over. Ruffin told McGhee that he was not under arrest or under detention. Ruffin then asked McGhee if she could search his duffel bag. In response, McGhee removed the bag from his shoulder and handed it to the detective.

Before searching the duffel bag, Ruffin asked McGhee if Armstead could search his person while she searched the duffel bag. Without speaking, McGhee turned and stepped towards Armstead, lifted his arms, and held them in a position parallel to the ground. Armstead told McGhee that he could put his arms

down and that the search could be done behind the bus to avoid embarrassment.  McGhee followed Armstead to the other side of the bus where Armstead patted down McGhee's outer clothing and felt chunky, irregular shapes in the left side of McGhee's jacket which Armstead believed to be narcotics.  Armstead looked inside the pocket and observed several rocks of cocaine.  McGhee was arrested and charged with possession of cocaine with the intent to distribute.  Ruffin testified that she did not complete a search of McGhee's duffel bag because she heard McGhee being handcuffed and arrested before getting into a search.

The trial court denied McGhee's motion to suppress the cocaine ruling that McGhee had not been seized for Fourth Amendment purposes by the detectives and that he voluntarily consented to the personal search.

## II.  STANDARD OF REVIEW

When a trial court's denial of a motion to suppress is reviewed on appeal, the burden is upon the appellant to demonstrate that the trial court's ruling, considering the evidence and reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, constituted "reversible error."  Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).

> "Ultimate questions of reasonable suspicion and probable cause to make a warrantless search" involve questions of both law and fact and are reviewed de novo on appeal.  In performing such analysis, we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to

- 3 -

> support it, and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.

McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Ornelas v. United States, 116 S. Ct. 1657, 1659, 1663 (1996)).  "We analyze a trial judge's determination whether the Fourth Amendment was implicated by applying de novo our own legal analysis of whether based on those facts a seizure occurred."  McGee, 25 Va. App. at 198, 487 S.E.2d at 261.

### III.  INITIAL ENCOUNTER WITH POLICE

A person is "seized" within the meaning of the Fourth Amendment if, "'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was free to leave.'"  Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (en banc) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).  A "voluntary or consensual encounter between a police officer and a citizen does not implicate the Fourth Amendment as long as 'a reasonable person would understand that he or she could refuse to cooperate.'"  Lawrence v. Commonwealth, 17 Va. App. 140, 144, 435 S.E.2d 591, 594 (1993) (quoting United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991)).  In this vein, "[a]n encounter between a law enforcement officer and a citizen in which the officer merely identifies himself and states that he is conducting a narcotics investigation, without more, is not a seizure within

- 4 -

the meaning of the Fourth Amendment, but is, instead, a consensual encounter." McGee, 25 Va. App. at 199, 487 S.E.2d at 262. In order for a "seizure" to occur, there must be some physical force used or threatened or some demonstrable show of police authority that would reasonably connote or communicate to the person that he was being detained and was not free to leave. Id.

Considering the totality of the circumstances and granting to the Commonwealth the reasonable inferences which flow from the proven facts, we hold that McGhee's initial encounter with Ruffin was consensual and was not a "seizure" that implicated the Fourth Amendment. Ruffin approached McGhee and asked him if he would speak with her. McGhee replied "sure." Ruffin did not display her weapon. She did not touch McGhee or restrict his freedom of movement. She informed McGhee that was he not being arrested or detained. Although Ruffin did tell McGhee that he "didn't have to go anywhere" when he moved away from her, the trial court necessarily concluded that McGhee was attempting to leave but was stepping to a place where he could speak privately with Ruffin. Based on McGhee's response of "sure" and the fact that McGhee remained there and cooperated, and in view of the fact that Ruffin's statement "related that the conversation could take place where they were [standing at the time] and there was no need to move to another location for that conversation," we are bound by the trial court's finding of historical fact. Viewing

the evidence in the light most favorable to the Commonwealth, there was no proof of use or threat of physical force or display of authority from which a reasonable person could have believed that he or she was not free to leave during Ruffin's inquiry, see Baldwin v. Commonwealth, 243 Va. 191, 196-99, 413 S.E.2d 645, 648-49 (1992), nor did the evidence prove that McGhee withdrew or intended to withdraw his consent to the encounter when he moved away from Ruffin.  See Lawrence, 17 Va. App. at 146, 435 S.E.2d at 595 (recognizing that withdrawal of consent requires an "unequivocal act or statement of withdrawal").  Therefore, we find, as did the trial court, that McGhee was not "seized" by Ruffin within the meaning of the Fourth Amendment during their initial encounter.

## IV.   CONSENT TO SEARCH

A search conducted with the free and voluntary consent of the accused is permissible under the Fourth Amendment.  See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).  "[C]onsent to a search . . . must be unequivocal, specific and intelligently given . . . and is not lightly to be inferred."  Elliotte v. Commonwealth, 7 Va. App. 234, 239, 372 S.E.2d 416, 419 (1988).  Although consent may not be grounded on a person's failure to resist police action, id., it may be inferred "from the actions and behavior of the defendant," which connote agreement or a willingness to cooperate.  McGee v. Commonwealth, 23 Va. App. 334, 343, 477 S.E.2d 14, 19 (1996), rev'd on other grounds, 25

Va. App. 193, 487 S.E.2d 259 (1997); see Hairston v. Commonwealth, 216 Va. 387, 388-89, 219 S.E.2d 668, 669 (1975) (per curiam). The Commonwealth "bears the burden of establishing consent [to search] and this burden is heavier where the consent is based on implication." Walls v. Commonwealth, 2 Va. App. 639, 645, 347 S.E.2d 175, 179 (1986).

In this case, McGhee's voluntary consent to Armstead's personal search may be inferred by his conduct. Ruffin asked McGhee if he would permit Armstead to search him. In direct response, McGhee turned and walked toward Armstead while raising his arms parallel to the ground as if to permit and facilitate a search. McGhee's actions were an affirmative and unequivocal grant of consent for Armstead to search him. See United States v. Wilson, 895 F.2d 168, 172 (4th Cir. 1990) (holding that defendant, without speaking, affirmatively consented to search of his person by shrugging his shoulders and extending his arms as response to officer's request to search); McGee, 23 Va. App. at 343-44, 477 S.E.2d at 19 (holding that seated defendant voluntarily consented to search of his person by standing up and extending his arms).

Upon de novo review, considering the evidence in the light most favorable to the Commonwealth and according it all reasonable inferences fairly deducible therefrom, we hold that the cocaine was seized pursuant to McGhee's voluntary consent to be searched after being approached by police detectives.

Accordingly, the trial court did not err when it denied McGhee's motion to suppress, and we affirm the conviction.

<u>Affirmed.</u>

Benton, J., dissenting.

Because I believe the evidence proved that the initial encounter between Detective Ruffin and Gerald McGhee was a seizure under the Fourth Amendment and that Ruffin did not have a reasonable, articulable suspicion justifying the investigatory stop, I would reverse the trial judge's refusal to suppress the evidence. Furthermore, I would hold that the Commonwealth did not meet its burden of proving McGhee consented to the search of his person.

I.

"A consensual encounter occurs when police officers approach persons in public places 'to ask them questions,' provided 'a reasonable person would understand that he or she could refuse to cooperate.'" Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (citations omitted). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." United States v. Mendenhall, 446 U.S. 544, 554 (1979). Thus, the encounter remains consensual only "as long as the citizen voluntarily cooperates with the police." United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991).

An encounter is not consensual "if, in view of all of the circumstances surrounding the incident, a reasonable person would

have believed that he was not free to leave." Mendenhall, 446 U.S. at 554. "The 'principle embodied by the phrase "free to leave" means the ability to ignore the police and to walk away from them,' to '"feel free to decline the officers' requests or otherwise terminate the encounter."'" Payne, 14 Va. App. at 89, 414 S.E.2d at 870 (citations omitted). "Fourth Amendment scrutiny is triggered . . . the moment an encounter '"loses its consensual nature."'" Id. at 88, 414 S.E.2d at 870 (citations omitted).

The evidence proves that after McGhee gave his ticket to the bus driver and was walking to board a bus at Gate 17, Detective Ruffin approached him, displayed her badge, and asked if she could speak with him. Although McGhee said "sure," he moved away from Ruffin. When he had gone "approximately five feet," Ruffin told McGhee that "he didn't have to go anywhere." In response to this comment, McGhee stopped walking. Ruffin then began questioning McGhee.

Although Ruffin's initial approach to McGhee was an attempt to have a consensual encounter, the consensual aspect of this encounter disappeared when McGhee started to walk away from Ruffin and Ruffin told McGhee not to "go anywhere." Under such circumstances, a reasonable person would not feel free to leave, to ignore the officer, or to continue to walk away. For Fourth Amendment purposes, McGhee was then "seized" by the officer. See Payne, 14 Va. App. at 89, 414 S.E.2d at 870. When McGhee stopped

a seizure occurred because he "submitted to [the officer's] show of authority." McGee v. Commonwealth, 25 Va. App. 193, 199, 487 S.E.2d 259, 262 (1997) (en banc).

In characterizing these events, Ruffin said she spoke to halt McGhee, "[b]elieving that McGhee was going to a place where he could speak privately with her." (Emphasis added). The officer's subjective belief must give way to the objective facts. Ruffin stopped McGhee as he was walking to his bus. He had the right to walk away. Indeed, the "'freedom to leave means fundamentally the freedom to break off contact, in which case officers must, in the absence of objective justification, leave the passenger alone.'" Wilson, 953 F.2d at 122 (citation omitted). Furthermore, Ruffin's subjective belief does not negate the fact that she told McGhee not to walk away. From this evidence, it is just as likely that McGhee was walking away from the officer to board his bus and terminate the attempted consensual encounter.

When Ruffin told McGhee "he didn't have to go anywhere," this was a show of authority such that McGhee was not free to leave. Whatever Ruffin may have subjectively believed, McGhee did not tell her that he wanted a private conversation. Acting on her subjective belief, Ruffin made a demonstrable show of authority when she told McGhee to remain. She then asked him to show her some identification. These circumstances fail to prove the encounter was consensual. Therefore, I would hold that

McGhee was seized for purposes of the Fourth Amendment when he started to walk away and Ruffin told him that he didn't have to go anywhere.

                                    II.

"The dispositive question then is whether the officers had a reasonable basis to suspect [McGhee] of criminal activity to justify the investigatory stop." McGee, 25 Va. App. at 201, 487 S.E.2d at 263. "It is well-established that an investigatory stop may be initiated only when an officer has 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.'" Riley v. Commonwealth, 13 Va. App. 494, 496, 412 S.E.2d 724, 725 (1992) (citation omitted). The officer's testimony of the facts and observations that gave rise to the stop must amount to more than an "inchoate and unparticularized suspicion or 'hunch.'" Terry v. Ohio, 392 U.S. 1, 27 (1968). "When examining the officer's articulable reasons for stopping a person, we examine the objective reasonableness of the officer's behavior rather than the officer's subjective belief that the conduct indicates criminal activity." Riley, 13 Va. App. at 496-97, 412 S.E.2d at 725.

The seizure in this case was unlawful because Ruffin lacked a reasonable articulable suspicion that criminal activity was afoot to stop McGhee. The officers did not testify as to any conduct by McGhee that gave rise to a reasonable suspicion that McGhee was engaged in criminal conduct. Ruffin's stop of McGhee

stands only upon her observation of McGhee exiting a bus from Washington, D.C. carrying a blue duffel bag.  After McGhee spoke to another man who exited the same bus, McGhee went to board another bus.  Ruffin had not received any tips about McGhee.  She did not see anyone commit a crime in her presence.  She did not suspect that McGhee had just committed a crime.  In fact, she admitted that one of the reasons she decided to approach McGhee was "because of the mannerisms and behavior of another individual."

"Manifestly, this conduct falls below activity necessary to justify a reasonable suspicion that a violation of law had occurred or was occurring."  Zimmerman v. Commonwealth, 234 Va. 609, 612, 363 S.E.2d 708, 710 (1988); see also Riley, 13 Va. App. at 497–99, 412 S.E.2d at 726–27.  Accordingly, I would hold that because the seizure was unlawful, any evidence obtained during the subsequent "consent" search should have been suppressed as "fruit of the poisonous tree."  Commonwealth v. Ealy, 12 Va. App. 744, 754, 407 S.E.2d 681, 687 (1991).

### III.

I would also hold that McGhee did not consent to a search of his person.  "It is well settled that the burden is on the Commonwealth to establish an exception to the warrant requirement."  Walls v. Commonwealth, 2 Va. App. 639, 645, 347 S.E.2d 175, 178 (1986).  "'Consent to a search . . . must be unequivocal, specific and intelligently given . . . and it is not

lightly to be inferred.'" Elliotte v. Commonwealth, 7 Va. App. 234, 239, 372 S.E.2d 416, 419 (1988) (quoting Via v. Peyton, 284 F.Supp. 961, 967 (W.D. Va. 1968)). While "consent need not be given orally but can be determined from the actions and behavior of the defendant," McGee v. Commonwealth, 23 Va. App. 334, 343, 477 S.E.2d 14, 19 (1996), rev'd on other grounds, 25 Va. App. 193, 487 S.E.2d 259 (1997), "the [Commonwealth] . . . bears the burden of establishing consent and this burden is heavier where the alleged consent is based on an implication." Walls, 2 Va. App. at 645, 374 S.E.2d at 178. In this case, there is no evidence that consent was ever given.

Nothing in the record proves that McGhee consented to the search of his person by Detective Armstead. The evidence proves that McGhee "never uttered a single word in regard to [Ruffin's] inquiry to make a search." When Ruffin ordered McGhee to stop and asked to search the contents of McGhee's bag, McGhee did not say anything. "He took the duffel bag off his right shoulder and handed it to [Ruffin]." Ruffin then asked McGhee if her partner, Detective Armstead, could search his person. She pointed in the direction of Armstead who was standing about twelve feet away behind McGhee. When McGhee turned and looked where Ruffin pointed, Armstead "closed in" on McGhee, stopping when he was about two to three feet away. Ruffin said McGhee's "eyes bulged." This was the first time McGhee had seen Armstead who was dressed in plain clothes. McGhee then turned back to Ruffin.

Ruffin identified Armstead to McGhee and told Armstead to "check [McGhee's] person." McGhee turned, spread his arms out so that they were parallel to the ground, and "took a step" toward Armstead. Armstead never asked McGhee if he could search him. McGhee made no statements to Armstead. Armstead told McGhee to put his arms down. Armstead then asked McGhee "Do you want me to do the search here or over in another area?" McGhee did not respond. Armstead asked him to step to the other side of the bus and walked toward an empty bus next to the one McGhee had been standing in line to board. McGhee followed. Armstead said that if McGhee had left instead of following him he would have followed McGhee and detained him. Armstead searched McGhee and discovered cocaine in McGhee's pocket.

Both officers testified that McGhee did not verbally assent to Armstead's search of his person. Furthermore, McGhee's conduct did not give any objective, reasonable indication that McGhee agreed to the officers' search. Whenever consent is not explicitly given, "the existence of consent to search is not lightly to be inferred." United States v. Patacchia, 602 F.2d 218, 219 (9th Cir. 1979). The burden of proving consent "cannot be discharged by showing no more than acquiescence to a claim of lawful authority." Bumper v. North Carolina, 391 U.S. 543, 548-49 (1967). See Crosby v. Commonwealth, 6 Va. App. 193, 199, 367 S.E.2d 730, 733 (1980). Although McGhee's conduct in turning toward Armstead "may well have signaled acquiescence, it did not

show consent." <u>Miranda v. State</u>, 375 S.E.2d 295, 298 (Ga. Ct. App. 1988).  Ruffin told Armstead to "check [McGhee's] person." At most, McGhee's conduct was a sign of passivity or a show of respect for the newly discovered officer's authority.  "Conduct that is questionable or clearly indicates mere acquiescence to perceived police authority will not support a search based on the party's alleged consent, regardless of the lack of coercion." <u>Evans v. State</u>, 804 S.W.2d 730, 734 (Ark. Ct. App. 1991).

Because the evidence proves that McGhee was "seized" for purposes of the Fourth Amendment, that the officers did not have a reasonable articulable suspicion to stop McGhee, and that McGhee did not give his consent to a search of his person, I would reverse the trial judge's refusal to suppress the evidence.